UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Raymond Dubois

    v.                            Civil No. 11-cv-263-JL
                                      Opinion No. 2012 DNH 109
Michael J. Astrue, Commissioner,
Social Security Administration

**MEMORANDUM ORDER**

This is an appeal from the denial of Raymond Dubois's application for Social Security benefits. See 42 U.S.C. § 405(g). An administrative law judge ("ALJ") found that Dubois, though suffering from severe impairments of tibial tendinitis and bilateral pes planus, was not disabled because he retained the residual functional capacity to perform light work, including his past relevant work as a telemarketer. See 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

Dubois has moved for an order reversing that decision, see L.R. 9.1(b)(1), arguing that the ALJ's findings were not supported by substantial evidence. The Commissioner of the Social Security Administration ("SSA") has cross-moved for an order affirming that decision, see L.R. 9.1(d), arguing to the contrary. This court has subject-matter jurisdiction under 42 U.S.C. § 405(g) (Social Security). After reviewing the administrative record, the parties' joint statement of material

facts, and their respective memoranda, the court concludes that the ALJ's findings were supported by substantial evidence in the record.  The court accordingly denies Dubois's motion and grants the Commissioner's motion.

## I.  **Applicable legal standard**

This court's review under § 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The ALJ is responsible for determining issues of credibility, resolving conflicting evidence, and drawing inferences from the evidence in the record. See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  If the ALJ's factual findings are supported by substantial evidence in the record, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted), they are conclusive, even if the court does not agree with the ALJ's decision and other evidence supports a contrary conclusion.  See 42 U.S.C. § 405(g); Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  The ALJ's findings are not conclusive, however, if they were "derived

by ignoring evidence, misapplying the law, or judging matters

entrusted to experts." Nguyen, 172 F.3d at 35.

## II. __Background__

Pursuant to this court's local rules, the parties filed a

Joint Statement of Material Facts (document no. 14), which is

part of the record reviewed by the court. See LR 9.1(d).  This

court will briefly recount the key facts and otherwise

incorporates the parties' joint statement by reference.

In August 2009, Dubois, who was 58 years old at the time,

filed applications for a period of disability, disability

insurance benefits and supplemental security income.  He claimed

that, as of April 1, 2009, he suffered from arthritis,

tendinitis, and diabetic neuropathy that limited his ability to

stand and caused him severe pain.  Admin. R. at 167.  Those

conditions, Dubois said, had forced him to reduce his work to a

part-time schedule and, because they continued to worsen, would

likely cause him to stop working entirely.  Id.

The SSA initially denied Dubois's applications on October

23, 2009, after determining that his condition was not severe

enough to prevent him from working.  Id. at 60, 69-74; see also

id. at 184.  Dubois appealed that decision to the ALJ, see

generally 20 C.F.R. § 405.301 et seq., who held a hearing on

3

Dubois's application on January 4, 2011.  Prior to the hearing,
Dubois submitted a number of medical records pre- and postdating
the alleged onset of his disability, as well as notarized
statements from several of his acquaintances who attested to a
decline in his physical condition.  At the hearing, Dubois
testified to his previous work history and the nature of his
medical complaints.  A vocational expert engaged by the SSA also
appeared and testified at the hearing.

   The record evidence showed that Dubois began to experience
back pain in late 2006 and was diagnosed with acute, mild lumbar
facet syndrome.  See generally Admin. R. at 225-43.  A little
over a year later, in November 2007, Dubois began complaining of
foot pain and was initially diagnosed with plantar fasciitis.
Id. at 339-40.  That pain continued to increase, and in June
2008, Dubois was diagnosed with tibialis tendinitis and pes plano
valgus.[1]  Id. at 320-24.  Though Dubois's podiatrist warned him
of the danger of deformity and disability at that time, and
instructed him to modify his shoes and obtain arch supports, id.
at 323, Dubois still had not obtained supportive insoles by
September of that year.  See id. at 308.

_____

   [1]Pes plano valgus is more commonly known as flat feet.  See
Dorland's Illustrated Medical Dictionary 1441 (31st ed. 2007).

4

Dubois continued to complain of foot pain in 2009.  He reported to his primary care provider that he always experienced some pain in his feet, but that the pain increased if he was standing.  Id. at 284.  On March 10, 2009, Dubois's podiatrist opined that his tibialis tendinitis had deteriorated.  Id. at 282.  In late April 2009 (after Dubois's alleged onset of disability), however, Dubois reported that his foot pain was a "2 out of 10," and his podiatrist opined that his tibialis tendinitis had improved, and that his right tendinitis was "improving with arch support."  Id. at 280.

Notwithstanding that supposed improvement, Dubois continued to complain of foot and leg pain throughout 2009 and into 2010. See, e.g., id. at 268, 421-23, 427-29.  He was referred to physical therapy, id. at 414, which, in April 2010, revealed that Dubois had a stand tolerance of "~ 2 hrs. - 2 ½ hrs." and that, although he had gotten stronger, his functioning was still limited.  Id. at 437.  In August 2010, Dubois's podiatrist opined that he "would benefit from [a] brace and modification of work activity to less than 3.5 hours weightbearing in one work period."  Id. at 395-96.  The podiatrist therefore prescribed a pair of Arizona braces for Dubois, id. at 381, 443, which Dubois maintained he was unable to obtain because of their cost.  See id. at 222.

5

At the hearing in January 2011, Dubois testified to the
subjective effects of his medical conditions, including the
limitations they imposed on him.  Dubois testified that he had
serious concerns about whether he would be able to stand due to
his foot and leg problems.  Id. at 37-38.  According to Dubois,
he began noticing foot pain if standing "for like ten minutes or
so . . . but it progressively gets worse as I'm standing and if I
stand for like three or four hours, afterwards I am in extreme
pain."  Id. at 40.  Dubois speculated that he would not be able
to perform a job where he sat and stood alternately in one-hour
increments "because it's too soon to be back to standing after
standing for a whole hour and have to come back to doing it."
Id.  Dubois testified that after a three- or four-hour shift at
work, he would be "really wiped" and would "[f]requently lay
down" after arriving home.  Id. at 46.  Dubois further testified
that he often had to go to the bathroom in the middle of the
night and was suffering from a sleeping disorder, and that the
combination of these latter two problems caused him to doze off
if seated for a length of time.  Id. at 38.

Dubois also testified about the requirements of his then-
current part-time job as a convenience store cashier and his
previous job as a telemarketer.  Dubois's prior job as a
telemarketer was done primarily while seated, and required him to

6

get up only occasionally. Id. at 33-34. He was required to lift
40-60 pound boxes of mailings about once a month, and would also
occasionally lift about ten pounds. Id. at 34-35. Dubois
further testified that in his job as a cashier, he had become
incapable of stocking shelves, and therefore primarily worked at
the register. Id. at 30. Because "company policy" required him
to stand while at the register, his limitations meant that only
very few shifts were available to him. Id. at 30-31.

The vocational expert characterized Dubois's convenience
store job, as he was performing it at the time of the hearing, as
a "cashier II" job, which constituted light, unskilled work. Id.
at 49. She characterized the telemarketer job as Dubois
performed it as primarily sedentary, but occasionally rising to
the medium level. Id. As regards the cashier II job, she
testified that there are many such jobs in the general economy
that allow a cashier to sit or stand at will. Id. at 51. She
further testified that a person who could perform "light exertion
work with maximum standing and walking only an hour per day"
could work at a telemarketing job as generally performed. Id.

The ALJ later issued a written decision finding that Dubois
met the insured status requirements of the Social Security Act,
had not engaged in substantial gainful activity since his alleged
onset of disability, and suffered from severe impairments of

tibial tendinitis and bilateral pes planus.[2]  Id. at 9-10.  The
ALJ also found, however, that these impairments did not meet or
equal an impairment listed in the Social Security regulations,
and that Dubois retained the residual functional capacity[3] to
perform light work, "except he can sit or stand alternatively at
will with maximum standing and or walking for 3 hours per workday
in increments of no more than one to one and one half hours," and
also had other restrictions preventing him from performing the
full range of light work.  Id. at 10.  In making this finding,
the ALJ noted that Dubois's "statements concerning the intensity,
persistence and limiting effects of [his] symptoms" were not
entirely credible.  Id. at 11.  Based upon these findings, the
ALJ concluded that Dubois was capable of performing his past
relevant work as a telemarketer, which generally required only
sedentary exertion.  Id. at 13.  As a result, the ALJ concluded

---

[2]The ALJ found that other of Dubois's impairments--diabetes,
sleep apnea, back condition, and vertigo--were non-severe, as
there was "no evidence that they cause more than mild limitations
in the claimant's ability to perform basic work activities."
Admin. R. at 10; see 20 C.F.R. §§ 404.1520(c), 416.920(c).

[3]"Residual Functional Capacity" is defined as "an assessment
of an individual's ability to do sustained work-related physical
and mental activities in a work setting on a regular and
continuing basis.  A 'regular and continuing basis' means 8 hours
a day, for 5 days a week, or an equivalent work schedule."
Social Security Ruling ("SSR") 96-8p, Policy Interpretation
Ruling Titles II and XVI: Assessing Residual Functional Capacity
in Initial Claims, 1996 WL 374184, at *1 (S.S.A. 1996)

that Dubois was not disabled as defined by the Social Security
Act.

The ALJ's decision was selected for review by the Decision
Review Board ("DRB").  See 20 C.F.R. § 405.401 et seq.  The DRB,
however, failed to complete its review during 90-day period
allotted by 20 C.F.R. § 405.420(a)(2), making the ALJ's decision
the final decision of the SSA.  Admin. R. at 1.  Dubois filed
this appeal on February 18, 2011.

III. **Analysis**

A five-step process is used to evaluate an application for
social security benefits.  20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4).  The claimant bears the burden, through the first
four steps, of proving that he is disabled, i.e., that (1) he is
not engaged in substantial gainful activity; (2) he has a severe
impairment; (3) the impairment meets or equals a specific
impairment listed in the Social Security regulations; and (4) the
impairment prevents or prevented him from performing past
relevant work.  Id.; see Freeman v. Barnhart, 274 F.3d 606, 608
(1st Cir. 2001).  At the fifth step, the SSA bears the burden of
showing that the claimant has the residual functional capacity to
perform other work that may exist in the national economy.
Freeman, 274 F.3d at 608; see 20 C.F.R. §§ 404.1520(a)(4)(v),

9

416.920(a)(4)(v).  "[A]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process."  Freeman, 274 F.3d at 608.

In the present case, the ALJ denied Dubois's application at step four, concluding that Dubois's medically determinable impairments did not prevent him from performing his past relevant work as a telemarketer, as Dubois was still capable of performing light work with some modifications.  Dubois challenges that conclusion, arguing that there is insufficient evidence in the record to support the ALJ's findings that (a) he could perform light work, (b) his description of the disabling effects of his conditions were not credible, and (c) he could perform his past relevant work as a telemarketer.  After careful review of the record and the parties' submissions, the court affirms the ALJ's decision.

**A.   Dubois's ability to perform light work**

Dubois first argues that the ALJ's finding that he was capable of performing light work is not based on substantial evidence, and, in fact, contradicts the record evidence.  He cites the opinion of Barry Frank, his treating podiatrist, who examined Dubois on August 24, 2010.  See Admin. R. at 395-96. Following that examination, Dr. Frank wrote out a prescription slip stating that Dubois should "limit work related activity to 3

10

½ hours daily as needed for foot pathology chronic." See id. at 381, 383. Dubois argues that the ALJ should have taken this statement "at face value" and concluded that Dr. Frank meant that Dubois was limited to working no more than three and one-half hours per workday. Were Dubois in fact so limited, that would necessarily render him disabled, because "[u]nder the applicable guidelines, an individual who is unable to work a 40-hour workweek is considered disabled." Mitchell v. Astrue, 2012 DNH 054, 15 (citing SSR 96-8p); see n.3 supra.

Rather than assuming that Dr. Frank meant to impose such a limitation, though, the ALJ viewed the prescription slip in conjunction with Dr. Frank's notes from the same day, which stated that Dubois "would benefit from . . . modification of work activity to less than 3.5 hours weightbearing in one work period." Id. at 395-96. In light of this statement, the ALJ inferred that the prescription slip "was intended for the claimant's employer, who required the claimant to stand for the duration of his shift." Id. at 12. He further noted that "the inclusion of the words 'as needed for chronic foot pathology' [in the slip] tends to indicate that this restriction would only apply to work requiring the claimant to be on his feet." Id. "[C]onsidering the intended audience of this note, and the more specific wording in the medical notes," the ALJ concluded that

11

"Dr. Frank did not intend to limit the claimant's sitting capacity."   Id.

Dubois suggests that the ALJ should have read the prescription slip in isolation, essentially ignoring the notes that Dr. Frank took on the same day.  This argument is not persuasive.  An ALJ must "fully account[] for the context of materials."  Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998); see also, e.g., Shaw v. Astrue, 2011 DNH 213, 15-16.  Nor is the court persuaded that the ALJ should have contacted Dr. Frank to clarify his opinion, as Dubois argues was necessary under the Social Security regulations providing that the SSA will recontact a medical source "when the report contains a conflict or ambiguity that must be resolved."  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).  Here, any ambiguity in Dr. Frank's opinion that Dubois should limit his "work related activity" to three and one-half hours per day is eliminated when that opinion is viewed in its proper context; as the ALJ concluded, that context makes clear that the "work related activity" Dr. Frank was concerned with was "weightbearing"--i.e., standing or walking--work activity.  See Admin. R. at 395-96.  In other words, read in context, Dr. Frank's overall opinion was not

sufficiently ambiguous to require any additional record development by the ALJ.[4]

Dubois also argues that the ALJ's finding that he could perform less than the full range of light work is necessarily inconsistent with the finding that he could stand and/or walk a maximum of three hours per day, as "a good deal of walking or standing" is "the primary difference between sedentary and most light jobs."  See SSR 83-10, Titles II and XVI:  Determining

---

[4]Even assuming that Dr. Frank's opinion was ambiguous, this court would be reluctant to ascribe any error to the ALJ.  As the Commissioner notes, Dubois's own attorney apparently interpreted Dr. Frank's notes in the same way as the ALJ, asking the vocational expert at the hearing:

> Is it vocationally significant for the jobs of convenience cashier and convenience cashier II that the claimant have more than 3.5 hours of standing per day.  In other words if like Dr. Frank said, all he could stand was 3.5 hours during the day, could he perform either the convenience cashier checker or the convenience cashier II?

Admin. R. at 53 (emphasis added).  "When a claimant is represented, the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored."  Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (1st Cir. 1998) (unpublished) (citation and internal quotation marks omitted); see also Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988)("[A]n ALJ is entitled to presume that claimant represented by counsel in the administrative hearings has made his best case.").  Where Dubois's own counsel did not contend at the hearing that any further record development was necessary, and apparently endorsed the same reasonable reading of Dr. Frank's notes that the ALJ later adopted, the court does not believe the ALJ should have independently seized upon and pursued another possible reading.

Capability to Do Other Work -- The Medical-Vocational Rules of
Appendix 2, 1983 WL 31251, *5 (S.S.A. 1983).  The court is not
persuaded by this argument, which is virtually identical to an
argument advanced and rejected in Putnam v. Astrue, 2011 DNH 123.
There, the claimant argued that the ALJ's finding that he could
perform light work was inconsistent with the finding that he
could stand and walk up to one hour per day.  Id. at 10.  Judge
McAuliffe declined to accept this argument, noting that although
the ability to stand and walk only one hour per day made it clear
that the claimant could not perform the full range of light work,
a "claimant's inability to perform the full range of light work
does not compel the conclusion that he is only capable of less
physically demanding (i.e., sedentary) work."  Id. at 10-11.  The
court agrees with that conclusion.  Indeed, the same Social
Security Ruling cited by Dubois recognizes that not all light
work requires "a good deal of walking or standing," and that a
job may fall into the category of light work "when it involves
sitting most of the time."  SSR 83-10, 1983 WL 31251 at *5.  In
this case, the record evidence amply supports the ALJ's
conclusion that Dubois was capable of working at a light

exertional level with some restrictions, including that he could stand and/or walk a maximum of three hours per day.[5]

## B.    The ALJ's credibility determination

Dubois next argues that the ALJ failed to sufficiently support the finding that Dubois's subjective descriptions of his limitations were not entirely credible.  In making that finding, the ALJ took into account a number of factors:  the "minimal clinical support for the claimant's allegations of total disability"; "noncompliance with treatment on the claimant's part," which the ALJ considered an indication "that the claimant's conditions are not as severe as his testimony would otherwise suggest"; and "the claimant's activities of daily living," which the ALJ also believed to be "inconsistent with a finding of total disability."  Id. at 11-12.  Each of those

---

[5]This conclusion aside, Dubois's argument that his walking and standing restrictions rendered him unable to perform light work suffers from an even more fundamental problem.  As the ALJ noted in his written decision, Dubois's past relevant work as a telemarketer required only sedentary exertion.  See Admin. R. at 13.  Thus, even if Dubois was able to perform only sedentary work due to his walking and standing restrictions, as he argues, that could not have prevented him from performing his past relevant work.  Similarly, although the court does not agree with Dubois that the ALJ failed to account for a rehabilitation record showing that his "stand tolerance" was two to two and one-half hours, even if the ALJ had concluded that Dubois could stand no more than that in an eight-hour workday, that would not have prevented Dubois from performing his past relevant work as a telemarketer, either.

findings is supported by substantial evidence, and is therefore entitled to deference.[6]   See Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987).

With respect to the ALJ's finding that there was minimal clinical support for Dubois's allegations of total disability, Dubois points out that the ALJ's written report incorrectly states that he maintained "full range of motion" in his lower extremities "[t]hrough the entire period."  Admin. R. at 11.  In fact, Dubois's medical records indicate that on two occasions in June and July 2010, he exhibited a mildly decreased range of motion--once in both ankles, see id. at 404, and later only in his right ankle, see id. at 399.  This oversight, however, does not undermine the ALJ's ultimate conclusion.  Apart from these two instances, Dubois identifies no other medical records indicating a reduction in his range of motion, and in fact, by his next two doctor's visits in October and November 2010, Dubois was again exhibiting "normal [range of motion] and strength" in

------------------------------

[6]Dubois does not appear to contend that, in evaluating his credibility, the ALJ either failed to apply or misapplied the factors for evaluating a claimant's subjective complaints of pain set forth in Avery v. Secretary of HHS, 797 F.2d 19, 28-29 (1st Cir. 1986), and later modified in expanded in SSR 96-7p, Titles II and XVI:  Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *3 (S.S.A. 1996).  The court therefore does not address those factors in detail, though they guided the ALJ's assessment of Dubois's credibility.

his lower extremities, with "no joint enlargement or tenderness." Id. at 387, 390.  Nor does Dubois identify any medical records contradicting the ALJ's observations that he maintained full strength and full sensation in his lower extremities, exhibited no neurological deficits, and was prescribed only NSAIDs for his condition.  Although Dubois does identify medical records demonstrating "abnormal findings" concerning his back, leg, ankle, and foot pain, the ALJ reasonably could have concluded that those findings, while exhibiting an impairment, did not substantiate Dubois's claims of total disability.

The ALJ's observation that Dubois had not complied with his providers' recommendations for treatment also finds support in the record.  Though Dubois's treating podiatrist informed him on June 3, 2008, that he "[n]eed[ed] to modify [his] shoes and obtain OTC arch supports," and warned him of "potential deformity and disability" if he did not, id. at 323, Dubois had not obtained supportive insoles by the time of a follow-up appointment in September of that year, see id. at 308, nor had he done so by March 2009, see id. at 282.  Dubois ignores this evidence, instead arguing that the ALJ impermissibly relied on his failure to obtain Arizona braces that had been prescribed for him in August 2010 by the time of the hearing in January 2011. Id. at 12; see id. at 381, 396.  Pursuant to SSR 96-7p, Dubois

17

says, the ALJ should not have drawn any inference about his credibility "from [his] failure to seek or pursue regular medical treatment without first considering" his explanation that he was not able to afford Arizona braces.  SSR 96-7p, 1996 WL 374186 at *7-8; see Admin. R. at 222.  The ALJ was not bound to accept that explanation, however, and in light of Dubois's earlier failure to follow his podiatrist's recommendation that he obtain supportive insoles, the ALJ could reasonably have rejected that explanation in favor of the alternative explanation that Dubois's conditions were not quite so severe as he claimed.  Cf. Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008) (sustaining ALJ's credibility determination, which was based in part on claimant's failure to pursue treatment, even though "much of [claimant's] failure to pursue treatment [could] be explained by his lack of insurance coverage or money to foot the bills").

Finally, the ALJ's finding that Dubois's daily activities are inconsistent with total disability is supported by record evidence.  As the ALJ observed, Dubois continued to work part-time at a job that required him to remain standing at all times, which is "strong evidence" that Dubois could remain standing for at least three hours per day in a normal workday.  Admin. R. at 12.  And, as the ALJ also observed, in applying for benefits, Dubois reported that he was able to prepare meals for himself,

18

perform housework, use public transportation, go shopping, and engage in leisure activities with friends.  Id.  Among other things, Dubois reported that he played guitar and surfed the internet on a daily basis, and that he had experienced no changes in those activities as a result of his disability.  Id. at 178. Based upon this evidence, the existence of which Dubois does not contest, the ALJ could have concluded that Dubois's claims of total disability were not credible.  See Berger, 516 F.3d at 546 (evidence that claimant continued to work on a part-time basis and engaged in non-work household activities "cut[] against his claim that he was totally disabled" and "indicate[d] that [he] could perform sedentary work and was not rendered entirely immobile").

The two District of Massachusetts cases upon which Dubois relies, Dedis v. Chater, 956 F. Supp. 45 (D. Mass. 1997), and Rohrberg v. Apfel, 26 F. Supp. 2d 303 (D. Mass. 1998), are not to the contrary.  In Dedis, the court actually sustained the ALJ's credibility determination where the claimant testified that he was "unable to engage in heavy household chores or any of his former recreational activities." 956 F. Supp. at 54.  Dubois, on the other hand, was not only capable of performing household chores, but by his own admission, engaged in recreational activities on a daily basis with no limitations due to his

19

alleged disability.  This also distinguishes him from the claimant in Rohrberg, who testified that "her ability to run errands daily . . . was very unpredictable from one day to the next," that she could "perform scheduled activities for two hours" before requiring one and one-half hours of rest, that on some days "she was fatigued to the point of disorientation, was too dizzy to drive, would rest most of the day, and was unable even to pay bills."  26 F. Supp. 2d at 310.

Because the ALJ's factual findings regarding Dubois's credibility are supported by substantial evidence in the record, the court will not disturb them.

### C. Dubois's ability to perform his past relevant work as a telemarketer

Dubois's final argument is that the ALJ erred in determining that he retained the residual functional capacity to perform his past relevant work as a telemarketer.  Dubois asserts that the ALJ, in making this finding, "relied on the [vocational expert's] response to a hypothetical question which fails to include the limitations supported by the record."[7]  In particular, he says,

---

[7]The ALJ's hypothetical question asked the vocational expert whether Dubois's past relevant work as a telemarketer and as a convenience store cashier could be performed by someone who could

    perform a range of light work in terms of lifting which
    would allow for sitting or standing alternatively at
    will with maximum standing and or walking for three

the ALJ's hypothetical question did not "include Dr. Frank's finding that Mr. Dubois is limited to working a maximum of 3.5 hours a day" or Dubois's alleged need to take a break every 30 to 45 minutes so that he would not fall asleep due to his sleep disorder.  Neither of these supposed deficiencies warrants reversal of the ALJ's decision.

First, as discussed in Part III.A, <u>supra</u>, the ALJ's reading of Dr. Frank's notes as expressing the opinion that Dubois was limited to three and one-half hours of <u>weightbearing</u> work per day, not to three and one-half hours of <u>any</u> work, was supported by the record.  Second, the ALJ ultimately concluded that Dubois's sleep disorder did not cause more than a mild limitation, noting that "the last evidence on record related to sleep apnea suggests that the claimant's condition had improved to the point where he had no significant apneas."  Admin. R. at 12.  Dubois testified to the contrary at the administrative

---

hours per work day?  And in increments of no more than an hour or hour and a half at a time with a short change of position. . . . [T]here would be only occasional climbing of stairs with no climbing of ladders.  Occasional balancing, occasional stooping and crouching and kneeling with no crawling.  Pushing and pulling would be limited to occasional as would operation of foot controls and that's bilaterally. . . . [T]here wold be no exposure to unprotected heights as well as dangerous moving machinery.

Admin. R. at 49-50.

hearing, claiming that he would fall asleep if seated for any length of time, id. at 38, but, as already noted, see Part III.B, supra, the ALJ was justified in not crediting Dubois's subjective descriptions of the limitations posed by his disorders. Accordingly, the ALJ did not err in relying upon the vocational expert's answer to a hypothetical question that did not include those "limitations."

**IV.** **Conclusion**

Pursuant to sentence four of 42 U.S.C. § 405(g), Dubois's motion to reverse and remand the Commissioner's decision[8] is DENIED.  The Commissioner's motion to affirm the decision[9] is GRANTED.  The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  June 20, 2012

cc:  Raymond J. Kelly, Esq.
     Robert J. Rabuck, Esq.

_____

[8]Document no. 8.

[9]Document no. 11.